## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHARLES ABRAHAM,

    Plaintiff,

    v.

    Civil Action No. TDC-23-3195

TRIDENT VANTAGE SYSTEMS, LLC,

    Defendant.

## MEMORANDUM OPINION

Self-represented Plaintiff Charles Abraham has filed a civil action against Defendant Trident Vantage Systems, LLC ("Trident") in which he alleges employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"). In a single submission, Trident has filed a "Motion for Summary Judgment Pursuant to F.R.C.P. 56 and Motion in the Alternative for Partial Summary Judgment and Dismissal Pursuant to F.R.C.P. 12(b)(6)," which the Court construes as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. The Motion is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

In his Complaint, Plaintiff Charles Abraham, who is Jewish and of Hungarian descent, alleges that on or about June 1, 2021, he was hired to work for Insight Global, LLC ("Insight Global"), a subcontractor to Trident, at the National Aeronautics and Space Administration

("NASA"), Goddard Space Flight Center ("Goddard"), in Greenbelt, Maryland. At that time, Trident was serving as the prime contractor to NASA under the Technology and Integrated Discipline Engineering Services contract. In this capacity, pursuant to task orders received from NASA, Trident transmitted NASA requests for personnel to Insight Global, a large recruiting and temporary personnel provider. Insight Global then identified potential candidates and directed them to NASA to be interviewed and either approved or disapproved.

As to Abraham specifically, in early 2021, Munther Hassouneh, a NASA manager and employee, sent a request to Trident for a contract employee for a NASA Global Positioning System project. Trident transmitted this request to Insight Global, which in turn identified Abraham as a potential candidate. Abraham was then interviewed by Hassouneh and approved to work at Goddard under Hassouneh's direct supervision.

According to Abraham, while he worked at Goddard between June 2021 and September 2021, Hassouneh engaged in discrimination against him. In particular, Abraham alleges that Hassouneh, a "Palestinian national," asked him to disclose his religion at work, "created an environment which encouraged and fostered a hostile work environment" based on "race, religion and age," and subjected him to "a stricter level of scrutiny," including by repeatedly reprimanding and disciplining him based on "false accusations." Compl. ¶¶ 7, 15–16, ECF No. 1. Abraham further alleges that when he engaged in "good faith complaints and opposition to race discrimination and racial harassment," he was subjected to retaliation consisting of "demeaning and hostile treatment," unwarranted negative performance feedback and discipline, assignment to longer shifts, and ultimately his termination on September 9, 2021. *Id.* ¶¶ 6, 19. Abraham asserts that Hassouneh made the decision to terminate him and, without communicating with a Trident official, directed Insight Global to terminate Abraham's contract. Finally, Abraham alleges that,

2

following his termination, Hassouneh engaged in retaliation by providing prospective employers with negative employment evaluations about Abraham in January and June 2022.

On January 6, 2023, Abraham contacted the United States Equal Employment Opportunity Commission ("EEOC") about his allegations of discrimination. Abraham's formal EEOC charge of discrimination, however, was not filed until March 1, 2023. On July 13, 2023, the EEOC issued to Abraham a Notice of Right to Sue.

On November 22, 2023, Abraham filed the original Complaint in this case which, construed liberally, alleges claims of race discrimination, a hostile work environment based on race, and retaliation under both Title VII and § 1981. On May 24, 2024, following a Case Management Conference, this Court granted the parties leave to conduct limited discovery on the following issues: (1) whether this case was timely filed; and (2) whether Abraham and Hassouneh were employees of Trident for purposes of the claims in this case. Upon the completion of this discovery, Trident filed the present Motion.

## DISCUSSION

In the Motion, Trident seeks dismissal or summary judgment on the grounds that (1) Abraham's Title VII claims are untimely; and (2) Trident was not legally responsible for the discrimination and harassment alleged in the Complaint because the alleged perpetrator of those actions, Hassouneh, was a NASA employee, not a Trident employee.

### I.    Legal Standards

In the Motion, Trident seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and summary judgment pursuant to Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

Generally, on a Rule 12(b)(6) motion, the Court may consider only the complaint and its attachments without converting the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

4

Here, where the title of the Motion notifies Abraham that Defendants are seeking summary judgment, and the Court has already permitted discovery on the issues underlying the Motion, the Court will construe the Motion as a Motion for Summary Judgment as to those arguments which require consideration of the submitted evidence. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

## II.    Timeliness

In the Motion, Trident argues that Abraham's Title VII claims are time-barred because he failed to comply with two different statutory timing requirements.

### A.    300-Day Limitations Period

Before filing suit under Title VII, a plaintiff must first file a charge of discrimination with the EEOC or a "State or local agency with authority to grant or seek relief" from the discriminatory practice. 42 U.S.C. § 2000e–5(e)(1). In a state such as Maryland, which has a state or local agency with such authority that has agreed to have the EEOC process charges of discrimination that would otherwise fall within its jurisdiction, the charge of discrimination must be submitted within 300 days of the act constituting the unlawful employment practice. *Id.*; *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n* (4th Cir. 2001); *EEOC v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir. 1990). Accordingly, a plaintiff cannot recover "for discrete acts of discrimination or retaliation" that occurred outside of the 300-day limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 229 (D. Md. 2022) ("Plaintiffs bringing Title VII claims in Maryland are subject to a 300-day statute of limitations.").

Here, Abraham filed his EEOC charge of discrimination on March 1, 2023. Thus, any claims based on acts of discrimination or retaliation occurring more than 300 days before that date, or before May 5, 2022, are time-barred. Where Abraham was terminated on September 9, 2021,

5

his Title VII claims based on his termination, and on discrimination or harassment occurring during his employment, are time-barred. Likewise, his claim that Hassouneh unlawfully retaliated against him by providing prospective employers with negative employment references in January 2022 is also time-barred. Only Abraham's claim of unlawful retaliation based on the provision of a negative employment reference in June 2022 falls within the 300-day limitations period.

**B.    90-Day Filing Period**

Title VII includes a second timing requirement: that the plaintiff must file a civil action based on the claims in an EEOC charge within 90 days after the EEOC, having completed its investigation, provides the plaintiff with a Notice of Right to Sue ("Notice"). *See* 42 U.S.C. § 2000e-5(f)(1); *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987). This 90-day period is not measured from the date of "actual receipt" of the Notice by the plaintiff. *Harvey*, 813 F.2d at 653–54. Rather, the United States Court of Appeals for the Fourth Circuit has adopted a "flexible rule" which considers when the plaintiff has constructive receipt of the Notice and whether there are reasonable grounds for equitable tolling of the filing period. *Id.* at 654. For example, in *Harvey*, the court held that a plaintiff's claims were time-barred when they were filed more than 90 days after the plaintiff's wife took delivery of the Notice, even though the plaintiff was not actually informed of the Notice for another five days. *Id.* Similarly, the Fourth Circuit held in another case that the 90-day period began to run when the plaintiff was notified that the Notice was available to be picked up at a post office, not when she actually picked it up. *Watts-Means v. Prince George's Fam. Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993).

Although the Fourth Circuit has not specifically addressed when a Notice sent by email may be deemed received so as to commence the 90-day period, other United States Courts of Appeals have held that the period starts on the date that an email with the Notice is sent by the

6

EEOC and received in the email inbox of the plaintiff or the plaintiff's counsel. *See McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1071 (8th Cir. 2024) (holding that Title VII's 90-day filing period commenced when the EEOC sent an email containing a link to the Notice to the plaintiff's attorney); *Lax v. Mayorkas*, 20 F.4th 1178, 1182 (7th Cir. 2021) (holding that Title VII's 90-day filing period commenced when the plaintiff received an email containing the Notice even if he did not open the attachment).

Likewise, judges in this District, in applying the Fourth Circuit's "flexible rule," have held that the 90-day period commences "when an email with a right-to-sue letter arrives in the complainant's inbox." *Jacobs v. Walmart Inc.*, No. RDB-22-2666, 2023 WL 4532822, at *5 (D. Md. July 13, 2023) (collecting cases); *see Garcia v. Balt. Police Dep't*, No. BPG-22-1423, I2023 WL 3043953, at *3 (D. Md. Apr. 21, 2023); *Ward v. Comm'r of Soc. Sec.*, No. WDQ-11-1004, 2012 WL 893256, at *4 (D. Md. Mar. 14, 2012). Other district courts within the Fourth Circuit have reached the same conclusion. *See, e.g.*, *Walker-Bey v. Gabrowski*, No. 22-CV-00361-SAL, 2022 WL 16510008, at *3 (D.S.C. Oct. 28, 2022); *Wolfe v. WPS Health Solutions, Inc.*, No. 20-CV-175, 2021 WL 1992027, at *3 (E.D. Va. Apr. 7, 2021). Where the 90-day period begins with the "giving of . . . notice," 42 U.S.C. § 2000e-5(f)(1), and where *Harvey* permits consideration of constructive receipt of the Notice, this Court agrees that, in the email context, the 90-day period is properly deemed to have commenced on the date that the EEOC sends the Notice, or a link to the Notice, by email to the plaintiff or the plaintiff's counsel.

Here, the EEOC has provided copies of three emails referencing the provision of the Notice to Abraham. In an email sent on July 12, 2023, the EEOC informed Abraham that the "Notice of Right to Sue will be issued through the portal. You have 90-days from receipt to file [a civil action] in court." Email at 1, Mot. Ex. B, ECF No. 21-3. Then, in an email sent to Abraham on July 20,

7

2023, the EEOC both attached the Notice, which was signed on July 13, 2023, and specifically advised Abraham: "The attached Notice of Right to Sue outlines that you may pursue the matter further by filing a private civil law suit, based on the Charge, in federal court *within 90 days of receipt of the Notice*," and that "[i]n the event you do not file a lawsuit within the time frame prescribed by the statute, the right to sue . . . will expire and cannot be extended or restored by the EEOC." Email at 1, Mot. Ex. C, ECF No. 21-4. In the third email, sent to Abraham on July 25, 2023, the EEOC referenced the fact that the Notice was sent with the July 20, 2023 email and again informed Abraham that if he did not file a civil action "within 90 days of receipt of the Notice . . . the right to sue will expire." Email at 1, Mot. Ex. D, ECF No. 21-5.

Although Abraham has asserted in his brief opposing the Motion that "due to EEOC error" the Notice was "never uploaded and only emailed to me on August 28, 2024," Opp'n at 1, ECF No. 23, his interrogatory responses establish that the reference to uploading relates to his claim that the Notice was not properly uploaded to the EEOC portal, as discussed in the first email, Interrog. Resp. at 1, Mot. Ex. G, ECF No. 21-8. Notably, Abraham has neither referenced nor denied the receipt of the other emails sent by the EEOC in July 2023, including, most specifically, the July 20, 2023 email and the Notice that was attached to it. Where Trident has provided copies of this specific email and the attached Notice, and Abraham has provided no evidence disputing the authenticity of these records, the Court finds that there is no genuine issue of material fact on whether Abraham had constructive receipt of the Notice as of July 20, 2023, at which point the 90-day filing period commenced. Where Abraham filed his original Complaint on November 22, 2023, 125 days after July 20, 2023, the Court concludes that the Complaint was untimely.

Under the "flexible rule" of *Harvey*, the Court must still consider whether "reasonable grounds exist for an equitable tolling of the filing period." *Harvey*, 813 F.2d at 654. At a

minimum, equitable tolling requires a showing of due diligence. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per curiam). Equitable tolling could potentially be appropriate if the plaintiff received "inadequate notice" or if "affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." *Id.* However, equitable tolling is generally applied "sparingly" and does not typically "extend to what is at best a garden variety claim of excusable neglect." *Gayle v. United Parcel Serv.*, 401 F.3d 222, 226–27 (4th Cir. 2005) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)).

Here, Abraham has failed to provide any basis to support equitable tolling. Rather, the record demonstrates that the EEOC sent him three emails in July 2023 specifically informing him of the requirement that he file a civil action within 90 days. Because these email chains show that following the first two emails, Abraham sent emails to the same EEOC addresses from which they were sent, the record is clear that the EEOC sent its emails to the correct email address. Where Abraham was informed on multiple occasions of this requirement, he cannot fairly be deemed to have lacked adequate notice or to have acted with due diligence. Accordingly, the Court will not apply equitable tolling to excuse the late filing. *See Baldwin Cnty. Welcome Ctr.*, 466 U.S. at 151 (declining to grant equitable tolling of the 90-day filing deadline where the plaintiff "was told three times what she must do to preserve her claim, and she did not do it"). The Motion will therefore be granted as to all of the Title VII claims.

## III.    Trident Liability

Because Trident's timeliness arguments do not apply to Abraham's § 1981 claims, the Court also addresses Trident's additional argument seeking dismissal or summary judgment on all claims because Trident cannot be held liable for the alleged discrimination and retaliation. Trident focuses on the fact that Hassouneh, the NASA manager alleged to have engaged in the

9

discrimination and retaliation, was not an employee of Trident. Although in the Complaint, Abraham initially alleged that Hassouneh was "a NASA and Trident Vantage System employee," Compl. ¶ 7, the record now establishes that Hassouneh was not employed by Trident. Specifically, Trident has submitted a declaration from a Trident official asserting that Hassouneh was a NASA employee who worked solely under the supervision and control of NASA, and that Trident did not supervise, direct, or monitor his conduct at work. Not only has Abraham failed to dispute this evidence, he has acknowledged in an interrogatory response that Hassouneh was a NASA employee and not a Trident employee. Although Abraham has asserted that Trident "had the ultimate hiring and firing authority on the contract," Interrog. Resp. at 2, Abraham stated in the Complaint that Hassouneh "made Insight Global (contractor) terminate Plaintiff's employment" and that the relevant Trident official "was not notified" by Hassouneh of this action, Compl. ¶ 10.

On this record, where there can be no dispute that Hassouneh was a NASA employee who was not under the supervision or control of Trident at the time of the alleged discrimination and retaliation, Abraham cannot establish that Trident is liable under either Title VII or § 1981. Title VII bars discrimination or retaliation by an "employer." 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). The term "employer" is defined, as relevant here, as a "person," including a "corporation[]" that is "engaged in an industry affecting commerce" and "any agent of such a person." 42 U.S.C. § 2000e(a), (b). Where the record establishes that Hassouneh was neither an employee of Trident nor under the supervision and control of Trident, he cannot be deemed to be an agent of Trident for purposes of Title VII. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754–55 (1998) (stating that courts are to "interpret Title VII based on agency principles," such that an employer is liable for the actions of "an employee within the scope of his or her employment"); *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir. 1993) (granting dismissal of a Title

10

VII claim where the plaintiff was terminated by someone who was not an agent of the defendant company "with respect to employment practices"). Yet as alleged in the Complaint, all of the decisions and actions constituting discrimination or retaliation—the harassment of Abraham, the decision to terminate him, and the retaliatory negative performance evaluations—were committed by Hassouneh.    Although Abraham asserts that "racial discrimination is deeply embedded in NASA and Trident Vantage Systems," Compl. ¶ 15, he has alleged no facts in support of this broad conclusory allegation other than those attributed to Hassouneh.  Notably, while Abraham alleges that Insight Global was also involved in his formal termination, he has not alleged any involvement by Trident in his termination.  Abraham has therefore failed to allege sufficient facts to establish discrimination or retaliation by Trident or one of its agents.

Although a defendant company may, under certain circumstances, be held liable for the discriminatory conduct of third parties, such as for harassment based on race or sex, any such liability, at a minimum, requires that the defendant "knew or should have known of the harassment and failed 'to take prompt remedial action reasonably calculated to end the harassment.'" *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 416, 422–23 (4th Cir. 2014) (quoting *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995)) (applying this standard to harassment of a tile company employee by an independent sales representative for another company that did business with the tile company).  Here, although Abraham has alleged in a conclusory manner that Trident met this standard, he has alleged no specific facts that demonstrate that Trident officials were aware of or should have been aware of Hassouneh's allegedly harassing conduct and instead affirmatively acknowledges that Trident officials were not informed of Hassouneh's termination decision.  *Cf. id.* (finding that there were a range of facts to support a finding that the employer "should have known" of the harassment of the plaintiff, including that a supervisor was aware of

11

inappropriate behavior by the alleged harasser, including making derogatory statements about Black former employees, had received complaints about harassment from the plaintiff, and had seen the plaintiff crying after an incident of harassment). Accordingly, Abraham does not have a viable Title VII claim against Trident.

For the same reasons, the § 1981 claims fail. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). The statute defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To state a claim under § 1981, a plaintiff must establish "purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). Section 1981 can provide basis for an employment discrimination claim based on race or a retaliation claim based on opposition to race discrimination. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (holding that § 1981 "encompasses claims of retaliation claims" for opposing race discrimination in employment); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2014) (en banc). Generally, the requirements for a § 1981 employment discrimination claim mirror those of a Title VII claim, including for a hostile work environment claim. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002) ("The required elements of a prima facie case of employment discrimination are the same under Title VII and Section 1981."); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (concluding that the elements of hostile work environment claims under § 1981 and Title VII are the same).

12

Where, as discussed above, Abraham has alleged no acts of employment discrimination or retaliation by Trident or any agent of Trident, and he has alleged no specific facts demonstrating that Trident officials had any knowledge or notice of those actions, the Court finds that Abraham cannot establish that Trident is liable under § 1981 and will thus grant the Motion as to both the Title VII and § 1981 claims.

**CONCLUSION**

For the foregoing reasons, Trident's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED.  A separate Order shall issue.

Date:   October 28, 2024

THEODORE D. CHUANG
United States District Judge